STATE, BY MILES LORD, ATTORNEY GENERAL, v.
NORA RUST AND OTHERS.
ALVIN NORDVICK, ALSO KNOWN AS
ALVIN M. NORDVICK, APPELLANT.

98 N. W. (2d) 271.

July 17, 1959—No. 37,719.

*H. O. Chommie,* for appellant.

*Miles Lord,* Attorney General, and *Joseph Perry,* Special Assistant Attorney General, for respondent.

NELSON, JUSTICE.

The State of Minnesota by condemnation proceedings acquired certain parcels of land for state highway purposes in Marshall County. The petition was properly filed, proper notice was given, and a proper hearing was held. After being duly appointed by the district court the

commissioners filed their report on December 27, 1957, with the clerk of the district court after which notice of the report was promptly sent to all parties who had an interest in parcel 61.

It appears that there were five property interests in parcel 61, as follows:

Alvin M. Nordvick—Holder of Contract for Deed.
Marie Nordvick—Inchoate.
W. T. Bailey Lumber Co.—Record Fee Owner.
L. W. Wentzel—Judgment.
County of Marshall—Tax and Ditch Liens.

The history of the ownership of the land of which parcel 61 forms a part is that Alvin M. Nordvick's father owned it prior to the year 1916; that he mortgaged it to the Minnesota Department of Rural Credit upon the creation of that agency. Later and during the depression years in the 1930's, Alvin's father, having in the meantime died, the mortgage was foreclosed. Alvin and his brother Palmer A. Nordvick bought the land back from the state under contract for deed dated September 15, 1941. Thereafter, on November 3, 1948, Alvin bought out his brother's interest and ever since has been the sole equitable owner by virtue of his being the vendee in the contract for deed.

Alvin, the appellant herein, entered into a logging contract with the W. T. Bailey Lumber Company in the fall of 1950 by which he undertook to log timber on certain timberlands owned by that company, a corporation. The company advanced funds for the logging operations which were to be paid out of the proceeds from the sale of pulpwood and the delivery of timber to the company. The operations under the agreement resulted in a loss to Alvin to the extent that when settlement time came it appeared that he owed a considerable sum to the Bailey Company. On April 4, 1951, he and his wife executed and delivered to the Bailey Company a mortgage upon Alvin's farm lands including parcel 61 in the sum of $3,500. At the same time it was agreed that the Bailey Company should take over the contract for deed in which Alvin is the vendee as security for Alvin's entire indebtedness which then included his losses on the logging contract and the balance unpaid on the contract for deed. This arrangement

left Alvin as the vendee and equitable owner under the contract, the Bailey Company having taken over as the state's grantee and assignee and thus standing in the shoes of the vendor holding the legal title. As of June 13, 1958, Alvin as vendee under the contract was indebted to the Bailey Company in the principal sum of $2,934.32, and unpaid interest aggregating $1,232.19. The record discloses no claim that the Bailey Company has any interest in the land other than as mortgagee and as assignee of the original vendor.

Alvin and his wife on November 12, 1957, executed a disclaimer of interest or assignment to the Bailey Company. This transaction was related to the losses Alvin incurred in connection with the logging contract, the purpose of the document being to relinquish his interest in the condemnation award, whatever it might be, to the Bailey Company to further the reduction of his indebtedness. The disclaimer was mailed to the petitioner by the Bailey Company and petitioner in turn placed it in the hands of the commissioners so that when the commissioners filed their report it was in the following form: W. T. Bailey Lumber Company; L. W. Wentzel; County of Marshall— $600; Alvin M. Nordvick—none; Marie Nordvick, his wife,—none.

The petitioner did not appeal any part of the award. Alvin appealed from that portion of the report containing the gross award of the commissioners which in fact he claims awards damages to him in the sum of $600 for the taking of said parcel 61. The notice of appeal was drawn in the form which substantially meets statutory requirements.

It is clear that the commissioners assessed the damages in gross, purporting to cover the several interests in the property. They proceeded to follow the uniform practice applicable in a proceeding in rem, to consider the property about to be condemned as an entire estate, so far as it concerns the public, the fee owner, and those having lesser interests which interests are to be foreclosed. The commissioners are not charged with determining questions of title between those who are listed as having property interests, that matter being left to the courts for apportionment, when the litigation upon the petition has taken the course permitted under the statute. Therefore, whether the commissioners placed the word "none" after the names of Alvin M. and Marie Nordvick has little if any significance in this proceeding

and certainly has no controlling effect one way or the other upon the right of Alvin to appeal from the gross award as it had been determined by the commissioners.

The State of Minnesota, on July 24, 1958, served its notice of motion under special appearance for dismissal of Alvin's appeal upon the ground that the appeal was made from a purported award in the amount of $600 to Alvin M. Nordvick and on the further ground that Alvin was not named in the award of $600 as to parcel 61 and for the additional reason that Alvin had forever disclaimed any and all right, interest, or claim in the award previous to the time that any award as to parcel 61 was determined by the commissioners, the appeal as taken being therefore contrary to law and the statutes in such case made and provided. The petitioner also stated that the appeal therefore does not effectively constitute an appeal and the court does not acquire jurisdiction under the appeal.[1]

---

[1]The disclaimer of interest dated November 12, 1957, reads as follows:

"THIS INDENTURE, made this 12th day of November, 1957, between ALVIN NORDVICK, also known as ALVIN M. NORDVICK, and MARIE NORDVICK, his wife, parties of the first part, and W. T. BAILEY LUMBER COMPANY, party of the second part,

"WITNESSETH

"WHEREAS, the second party is the owner of the premises in Marshall County, Minnesota, described as follows, to-wit:

"The East Half of the Southeast Quarter (E1/2SE1/4) Section Eleven (11), Township One Hundred Forty-six (146) North of Range Forty (40) West; the West Half of the Southwest Quarter (W1/2SW1/4) and the Southeast Quarter of the Southwest Quarter (SE1/4SW1/4) and the East Half of the Southeast Quarter (E1/2SE1/4) and the Southwest Quarter of the Southeast Quarter (SW1/4SE1/4), all in Section Twelve (12), Township One Hundred Forty-Six (146) North of Range Forty (40) West, and

"WHEREAS, the first parties are the holders of a vendees' interest under a contract for deed on said premises, and

"WHEREAS, the State of Minnesota has instituted proceedings to condemn a portion of said premises for trunk highway purposes, the portions to be condemned being known as DITCH PARCEL 60 S. P. 4508 (89=136) 903 and PARCEL 61 S. P. 4508 (89=136) 903.

"Now, THEREFORE, for a good and valuable consideration, the receipt whereof is hereby acknowledged, the parties of the first part do hereby

We must take into account the fact that following Alvin's filing of the notice of appeal from the commissioners' report the attorney general served and filed a regular note of issue to place the issues arising out of the appeal upon the calendar of the term of the district court to be held on March 24, 1958, "for the trial of the issues of law and fact by jury." The record discloses no special appearance on the question of the sufficiency of the notice of appeal before serving and filing of the note of issue. The proceeding which involved the notice of motion under special appearance was not commenced until July 24, 1958, more than 4 months after serving and filing the general note of issue.

The state's motion for dismissal of Alvin's appeal was granted October 10, 1958. Alvin appeals here from the order. The court below has stated in its memorandum:

"* * * (1) That the appeal here taken has not been made in compliance with the statutory provisions, and that the Court is thereby wholly without jurisdiction. (2) That the disclaimer and assignment executed by the appellant to a co-respondent interested in the tracts here in question prior to the making of the Commissioners' award, when acted upon by a third party, fixed the rights and liabilities of the contracting parties with respect to the third party who acted thereon. (3) That since the Court never acquired jurisdiction by the attempted

---

forever disclaim any and all right, interest or claim they may have or may hereafter have to any and all awards made or hereafter to be made to the owners of said premises by the State of Minnesota as a result of said condemnation proceedings; and the first parties do hereby assign and set over unto the second party all of their right and interest in and to any and all such awards, and they do hereby authorize, empower and direct the State of Minnesota to make such award or awards directly to the second party in the same manner and to the same extent as such award or awards would have been made to the first parties, had this instrument not been made.

"In Testimony Whereof, the parties of the first part have hereunto set their hands the day and year first above written.

"In Presence of:
"/s/ Douglas N. Dann          /s/ Alvin Nordvick
"/s/ Luceille L. Neimann      /s/ Marie Nordvick
"(Acknowledgment omitted.)"

appeal herein, the attempted general appearance on behalf of the State, by the filing of a Note of Issue, was ineffectual to confer jurisdiction upon the Court."

The questions involved in the instant case appear to be the following:

Can the appeal notice be held defective upon the record as a whole where the consideration of the disclaimer is the contract indebtedness and the eventual proceeds of the award are to be applied in reduction of such indebtedness?

Upon the facts shown by the record where the eventual proceeds are to be applied in reduction of the unpaid contract indebtedness, can the appeal notice of the vendee be held fatally defective because he did not specifically appeal from the award of "none" to him or include it?

Where the state serves and files its note of issue in the accepted form to bring the case on for trial by jury, has the state thereby appeared generally and thus waived its right to object to the sufficiency of the vendee's notice of appeal?

It is clear from the record that the disclaimer in question was executed before the commissioners made any award. It contemplated payment to the Bailey Company from the award when finally determined whether by the commissioners, through acceptance of their award, or by jury trial. That Alvin is still the equitable owner of the premises under contract for deed stands undisputed. The title held by the Bailey Company has been fully explained herein. The eventual award was to be applied in reduction of Alvin's indebtedness to the Bailey Company, and as we view it payment from the gross award to the Bailey Company, under all the facts and circumstances, is in effect payment to the equitable title holder. There is no complaint on Alvin's part because the payment is to be made to his creditors. Under the disclaimer we see nothing to stand in the way of Alvin's right to assume the burden and expense of his appeal and to assume that he has the right to complain of the inadequacies of the gross award. The state knew full well that when the gross award would finally be paid it would have to go to those creditors, as their interests appear, who held property interests. These are facts well within the knowledge of the state due to

the record search made at the outset and at least after the disclaimer came into its hands. The contention that it was incumbent upon Alvin to appeal from that part of the award placing "none" opposite his name is without merit. He was entitled to a full protection of his rights as one of the class of persons entitled to appeal under the provisions of M. S. A. 117.20. Clearly there is identity of interest here between the vendor and vendee and the mortgagor and mortgagee, even to the extent that they may in some degree be looked upon as in effect joint owners. There is nothing in the record to indicate that both the Bailey Company and Alvin are not interested in obtaining a gross award that is adequate, to the extent of just compensation, and the vendee in the contract more so than any creditor. What complaint can a creditor standing in the shoes of the Bailey Company have if it gets what it is entitled to from the gross award? If it is insufficient to wipe out the indebtedness it will still have its security for the balance of the indebtedness which Alvin is eventually obligated to pay in full. It was hardly necessary for Alvin to go into any detailed explanation in his notice of appeal to admonish the state that as the holder of an equitable title and as the vendee in the contract for deed he intended that the gross award when finally distributed should, in so far as available after other property interests had been satisfied, be applied in reduction of the contract and mortgage indebtedness. To deny to Alvin his statutory right to appeal under the circumstances here disclosed would clearly violate the general purposes and the underlying principles governing eminent domain proceedings. Just and weighty reasons would have to be shown to exist in order to permit the state to evade the provisions of Minn. Const. art. 1, § 13, which reads:

"Private property shall not be taken, destroyed or damaged for public use without just compensation therefor, first paid or secured."

Alvin, the appellant herein, has no quarrel with the award of "none" to him, nor that the commissioners' award is made in gross, but contends that the award in gross is inadequate and that he as the owner, without regard to the existing disclaimer, has the right to appeal from the award upon the grounds of its inadequacy. We see nothing in the record which would indicate that the state has in any manner been

misled by the appeal notice; that the state may have to pay double is an argument without merit. Certainly if the court before whom the appeal is tried deems it necessary, it may direct issues to be framed and bring in other parties. § 117.14. As has been aptly stated in appellant's brief, the respondent is not before this court seeking clarification but the total abrogation of the landowner's right to review the award of the commissioners. The decisions in this state have never unduly restricted the owner's constitutional right to just compensation where there has been a taking of private property for public use under the powers of eminent domain. Attempts on the part of a condemnor by technical means to defeat the landowner's right to his day in court have never been viewed with favor. Every owner is constitutionally entitled to a just and equal application of the rule that what he owns shall not be taken from him or destroyed or damaged for public use without just compensation.

In State, by Lord, v. Radosevich, 249 Minn. 268, 82 N. W. (2d) 70, where the state sought to obtain the dismissal of appeal by a property owner on a mere technicality, this court said (249 Minn. 275, 82 N. W. [2d] 74):

"* * * The statute should not be construed so as to deprive a landowner of his day in court unless the clear language of the statute requires such construction. We are of the opinion that the statute permits an appeal from the total award to any party for all damages sustained in the proceeding in one notice, provided the notice otherwise complies with the statute. He also probably could file separate notices as to each parcel if he saw fit to do so.

"Furthermore, construing the statute so that a party may appeal from the entire award to him by one notice of appeal presents no difficulty as to the trial of such case. If there are conflicting claims of ownership or rights in different tracts involved in such appeal, the court can easily determine the amount allocated to each tract by the jury by the use of special interrogatories. We have held in the past that the commissioners may make an award in gross. The jury may likewise make an award in gross. By the use of special interrogatories, there should be no more difficulty in determining a division of such

amount among the respective interests of the claimants than if the awards as to each parcel are considered separate controversies."

In Peterson v. City of Minneapolis, 175 Minn. 300, 221 N. W. 14, this court held that condemnation proceedings are in rem against the land and that the award should be in gross; that it is not necessary for the commissioners to make a specific determination as to what portion thereof shall be allotted to each of the interested parties; that the damages sustained by the taking of property by condemnation proceedings are to be determined by ascertainment of the full true and fair market value of the property; that the determination of the damages on that basis constitutes the entire concern of the commissioners; and that they have nothing to do with defining the respective interests of the various claimants, known or unknown.

A reading of the text 6 Dunnell, Dig. (3 ed.) § 3110, makes it clear that the sole issue before the court on an appeal from an award is the amount of the damages to be awarded; that the question of title is not in issue. The statute does not contemplate that there should be a trial and determination either before the commissioners or the jury of the rights of conflicting claimants to the land as between themselves. See, State ex rel. Kafka v. District Court, 128 Minn. 432, 151 N. W. 144; Kafka v. Davidson, 135 Minn. 389, 160 N. W. 1021; Eyre v. City of Faribault, 121 Minn. 233, 141 N. W. 170, L. R. A. 1917A, 685.

Since Alvin as the equitable owner of the property is interested in the apportionment of what constitutes an adequate award, what other remedy could he pursue except to appeal from the gross award which he considered inadequate, as he did? In the end, and at the proper time, the award as finally determined will be deposited with the clerk of the district court. If at that time there should be any controversy between the appellant and his secured creditor, the Bailey Company, it can be determined in a proper proceeding between them. There is no requirement that the commissioners, or the court and jury on appeal from the award, must determine separate issues between vendor and vendee at that stage of the condemnation proceeding. Those issues, if any exist, may properly be determined in a later proceeding, in

which the state will not have any concern except to pay the amounts from the gross award to the parties found to be entitled to them.

It is to be noted that § 117.20, subd. 4, provides for an appeal by "any party to the proceeding" and subd. 5 thereof provides among other things that "the duty of the public officials to pay the amount of any award or final judgment upon appeal shall, for all purposes, be held and construed to be full and just compensation to the respective owners or the persons interested in the lands."

We have not yet fully considered the position which the disclaimer between appellant and the Bailey Company legally occupies in these proceedings. The state contends that the disclaimer is absolute on its face and that in no sense can its purpose be shown or its consideration explained; that this is so even though the state is not a party to it and in no sense its beneficiary. It is elementary that the actual nature of a contract even between the parties may be shown and that the law disregards the form of an agreement and looks to its true and real nature. Thus a contract may always be shown to be one given as and for security rather than as an absolute conveyance. 7 Dunnell, Dig. (3 ed.) § 3385. So, it cannot be denied that the real consideration of the so-called disclaimer may be shown even if the action or proceeding had been between the parties and not as in this case between one of them and a third party. See, 7 Dunnell, Dig. (3 ed.) § 3373.

Although the petitioner contends for the absoluteness of the disclaimer, we must nevertheless adhere to the rule that the parol evidence rule does not apply between strangers to the instrument, or between a party and a stranger. See, 7 Dunnell, Dig. (3 ed.) § 3396.

In Davis v. Moses, 172 Minn. 171, 175, 215 N. W. 225, 226, this court said:

"* * * Respondents not being parties to these instruments were at liberty to show what actually was agreed upon and what was done, even though the evidence so adduced by them did vary the terms of the instruments."

In Schlecht v. Schlecht, 168 Minn. 168, 209 N. W. 883, the court said that the rule prohibiting the admission of parol evidence to vary or contradict the terms of a written instrument cannot be invoked by

a stranger to the instrument and has no application in controversy between him and a party to the instrument.

In King v. Hartford Fire Ins. Co. 133 Minn. 322, 158 N. W. 435, this court held evidence properly admitted that a bill of sale, absolute on its face, was actually intended as security and hence did not void the insurance policy because of a clause prohibiting the assignment of the insured property without the insurer's permission. Rupley v. Fraser, 132 Minn. 311, 156 N. W. 350, holds to the same effect.

It is therefore clear that under the circumstances surrounding the execution of the document here, it cannot be classified as an absolute, irrevocable, unexplainable instrument which would bar the appellant from showing what was actually agreed upon between the parties to the instrument. Clearly the petitions and the notices in the instant proceedings themselves show the relationship between appellant and the Bailey Company. The petitioner cites Martin v. Setter, 184 Minn. 457, 239 N. W. 219, 80 A. L. R. 471, as authority for their contention that parol evidence was inadmissible and incompetent to explain what was meant and what was done in the premises. We find no points of analogy between the instant case and the Martin case since the state did not acquire any rights by the instant disclaimer. All that it did was to place an obligation upon the state to pay to the assignee therein its share of the gross award that would thereafter be made either by the commissioners or by a jury. It would be out of harmony with the principles of law applicable to the facts in the instant case to hold that Alvin thereby signed away his right to appeal and that no matter what form his appeal might take he could be denied his right of appeal.

■ Consideration must be given to the serving of the note of issue, to place the appeal upon the calendar. The note of issue reads as follows:

"You Will Please Take Notice that the above-entitled action will be placed upon the calendar of the above-named court for the next general term of the District Court to be held in and for said County at the Court House in Warren, in said County, on the 24th day of March, 1958, for the trial of the issues of law and fact by jury."

M. S. A. c. 117 is excepted from the rules of civil procedure. A dis-

cussion of the general subject of appearance may be found in 1 Dunnell, Dig. (3 ed.) § 475, et seq. Section 479 discusses what constitutes general appearance as follows:

"An appearance for any other purpose than to question the jurisdiction of the court is general and gives the court jurisdiction over the person. No special appearance can be made except to raise jurisdictional questions. If a party so far appears as to call into action the powers of the court for any purpose, except to decide upon its own jurisdiction, it is a full appearance. A party cannot at the same time object to and ask the court to exercise its jurisdiction. In determining whether an appearance is general or special, the purposes for which it was made should be considered rather than what the party has labeled it. A party appears generally when he takes or consents to any step in the cause which assumes that the jurisdiction exists or continues."

In Carr-Cullen Co. v. Cooper, 144 Minn. 380, 384, 175 N. W. 696, 698, this court said that:

"* * * If a party so far appears as to call into action the powers of the court for any purpose except to decide upon its own jurisdiction, it is a full appearance. He appears generally when he takes or consents to any step in a case which assumes that jurisdiction exists. Curtis v. Jackson, 23 Minn. 268; Johnson v. Hagberg, 48 Minn. 221, 50 N. W. 1037; St. Louis Car Co. v. Stillwater Street Ry. Co. 53 Minn. 129, 54 N. W. 1064."

See, State ex rel. Northwestern Nat. Bank v. District Court, 192 Minn. 602, 258 N. W. 7; Schlitz Commercial Co. v. Good Will League, Inc. 180 Minn. 492, 231 N. W. 209; Morehart v. Furley, 149 Minn. 56, 182 N. W. 723; St. Louis Car Co. v. Stillwater St. Ry. Co. 53 Minn. 129, 54 N. W. 1064.

This court in Johnson v. Hagberg, 48 Minn. 221, 50 N. W. 1037, held that where there is any defect as to jurisdiction, or it has ceased, the parties may waive the objection, and they do so when they take or consent to any step in the cause which assumes that the jurisdiction exists or continues. Quaker Creamery Co. v. Carlson, 124 Minn. 147, 144 N. W. 449.

In Zell v. Friend-Crosby & Co. 160 Minn. 181, 199 N. W. 928, this

court held that serving a demand and affidavit for change of venue constituted a general appearance even though the original demand and affidavit with proof of service had not been filed. While no case has been found involving the effect of the service of a notice of trial or a note of issue, nevertheless, the principles established seem clear and we have no hesitancy in holding that the rule has application to the serving and filing of the note of issue in the instant case and that doing so for the purpose of placing the action upon the calendar for trial constituted a full and general appearance.[2]

We reach the conclusion that there was in the instant case sufficient compliance on the part of appellant with applicable statutory provisions on appeal; that the court acquired jurisdiction; and that appellant is entitled to be heard on the issue of his damages.

Accordingly the order of the court below must be reversed.

Reversed.

---

[2]3 Am. Jur., Appearances, § 11, states that a defendant who intends to rely on a want of jurisdiction must appear, if at all, for the sole purpose of objecting to the jurisdiction of the court and that an appearance in the first instance for any other purpose is usually considered general and gives the same jurisdiction as though process had been regularly served. It was said in State ex rel. Nelson v. Grimm, 219 Wis. 630, 636, 263 N. W. 583, 586, 102 A. L. R. 220, 223:

"* * * if a party desires to take advantage of want of service of process sufficient to give the court jurisdiction of his person, by moving to set aside the proceedings on that ground, he must appear specially for that purpose and keep out of court for all others."